J. M. LEE, as Comptroller, v. O. W. SMITH, doing business as Lake County Supply Company and WILSON & TOOMER FERTILIZER COMPANY.

198 So. 197
En Banc
Opinion Filed October 8, 1940
Rehearing Denied November 5, 1940

558

*George Couper Gibbs,* Attorney General, *Nathan Cockrell,* Assistant Attorney General, and *Keen & Allen,* for Petitioner;

*Milam, McIlvaine, & Milam,* for Respondents.

CHAPMAN, J.,—The record in this case discloses that O. W. Smith owned and operated a mercantile establishment situated at Astatula, Florida, in which he conducts a general mercantile business and pays a flat store tax provided for in Subsection (a), Section 4 of Chapter 16848, Acts of 1935, Laws of Florida. He also has a storage warehouse located at Tavares, Florida.

The Wilson & Toomer Fertilizer Company manufactures fertilizer at a factory situated in Jacksonville, Florida, and operates nine warehouses located in different sections of Florida. Fertilizer is consigned to Smith and stored in his Tavares warehouse and when Smith sells certain fertilizer he receives a commission as his compensation. Generally the fertilizer is sold on time and notes evidencing deferred payments are made to the fertilizer company and a sale cannot be made by Smith on the deferred payment plan without the approval of the fertilizer company. Some few cash sales are made by Smith. The warehouse at Tavares

is used solely for storage purposes and no sales are made therefrom, but the sales are made from the store at Astatula and the fertilizer then delivered or obtained from the warehouse at Tavares. All sales of fertilizer on the part of the fertilizer company are made by it at its factory and distributed to its nine storage warehouses and the consumers can purchase fertilizer at the factory or at either of the storage warehouses. The fertilizer company pays a tax as manufacturer under Section 7 of Chapter 18011, Acts of 1937, Laws of Florida, and as a wholesaler under Section 5 of the same Act.

The general store of Smith sells feed, lumber, building material and hardware, and carries a stock of general merchandise and the gross sales therefrom constitutes approximately 80% of the total of all sales. The fertilizer company does not own or attempt to control the general mercantile business of Smith. The fertilizer is delivered to Smith on consignment and while he is authorized to sell for cash and transmit the proceeds to the fertilizer company, he has no authority to sell and deliver under the deferred payment plan, as the contract of consignment places the authority to approve the sale and extend credit in the fertilizer company. It is admitted on the record that the fertilizer is manufactured in Jacksonville, Florida, by the Wilson & Toomer Fertilizer Company and all sales to consumers are made by it at its factory or through its warehouses.

The duty of enforcing the several provisions of Chapter 16848, Acts of 1935, was by the enactment placed with the State Comptroller and in the administration thereof he demanded payment of the gross receipts tax on sales of the fertilizer sold by Smith from his store at Astatula was delievered from the warehouse at Tavares, and a portion thereof was paid under protest.

On February 14, 1940, a bill of complaint was filed in the Circuit Court of Leon County, Florida. The bill prayed for an injunction restraining the application of the provisions of Chapter 16848, *supra,* to the sales of fertilizer wherein the deliveries were made by Smith at his store in Astatula and at the warehouse at Tavares. On March 20, 1940, Honorable J. B. Johnson, Circuit Judge, granted a temporary restraining order against the Comptroller, restraining the enforcement of the aforesaid provisions. A motion to dismiss the bill of complaint and a motion to strike described portions thereof were overruled and denied, and on petition for a writ of certiorari in this court, prosecuted by the Honorable J. M. Lee, State Comptroller, it is contended that these orders, respectively, are erroneous.

Counsel for petitioner poses two questions for a decision by this Court, viz.:

"a. Under the allegations of the bill of complaint was the respondent, O. W. Smith, liable for the gross receipts tax under subdivision B, Section 4, Chapter 16848, Acts of 1935, Laws of Florida, upon the sale of fertilizer by him from his store at Astatula and warehouse at Tavares, Florida?"

"b. Under the allegations of the bill of complaint and amendment thereto was the respondent, Wilson and Toomer Fertilizer Company, liable for the graduated store tax under subdivision A, Section 4, Chapter 16848, Acts of 1935, Laws of Florida, for its factory and nine warehouses in the State of Florida?"

Counsel for petitioner cite Lee v. Federal Bake Shop, Inc., 142 Fla. 684, 196 So. 185; Lee v. Hector Supply Co., 133 Fla. 95, 182 So. 613; Lee v. Jacksonville Gas Co., 138 Fla. 890, 190 So. 800; Liggett Drug Co. v. Lee, 126 Fla. 359, 171 So. 326; State *ex rel.* Lane Drug Stores, Inc., v. Simpson, 122 Fla. 582, 166 So. 227; Security Feed and Seed

Co. v. Lee, 138 Fla. 592, 189 So. 869, to support their contention.

The questions *supra* are so correlated that they may be disposed of under one assignment. The motion to dismiss admitted the truth of the allegation appearing in the bill of complaint to the effect that the Wilson & Toomer Fertilizer Company at Jacksonville manufactured the fertilizer disposed of or sold through Smith at his store at Astatula. The consignment agreement is attached to the bill of complaint and paragraph 7 thereof provides, viz.:

"7. All such fertilizers consigned by the company to the agent or to any other person at his request, and the proceeds thereof when sold and all cash, notes, accounts and evidences of indebtedness of said sale shall be and remain the exclusive property of the company; and such fertilizers, and the proceeds thereof when sold, shall be held by the agent in trust solely for the company. Upon demand the agent will deliver to the company all or any part of such fertilizers so consigned. The agent shall not have or be entitled to any lien of any character on any property of any kind of the company coming into his possession or control."

We do not think the title to the fertilizer, under the terms of this agreement, passed to Smith, but at the most made him the agent of the Wilson & Toomer Fertilizer Company. See Edwards v. Baldwin Piano Co., 79 Fla. 143, 83 So. 915.

An answer to the question posed is found in paragraph (f) of Section 2 of Chapter 16848, *supra*. This Court, in defining gross receipts as referred to in the case of Liggett Drug Co. v. Lee, 126 Fla. 359 (text p. 366), 171 So. 326, said:

"By paragraph (f) of Section 2 of Chapter 16848, *supra*, it is provided that 'gross receipts' means the total amount of the sales price of the retail sales of retailers, including any services that are a part of such sales, valued in money,

whether received in money or otherwise. That paragraph likewise provides that the term 'gross receipts' as used in the taxing provisions of Class 1 of Subdivision 4 of the Act, shall *not* include the receipts derived from the sale of bakery products, dairy products, ice, insecticides, fungicides, fertilizer and agricultural or horticultural products, or implements *when sold by the producer* or manufacturer thereof.' (Emphasis supplied.)

"It is the opinion of the Court that the statutory words, 'when sold by the producer or manufacturer thereof,' have reference to retail sales of bakery products, dairy products, ice, insecticides, fungicides, fertilizer, and agricultural or horticultural products or implements, only *when sold by the actual producer or manufacturer* of same at a retail store of the actual producer or manufacturer, duly licensed under the Act, * * * ' " (Emphasis supplied.)

The business of the Wilson & Toomer Fertilizer Company, primarily engaged in the manufacture of fertilizer and the sale thereof at its place of business at Jacksonville and the warehouses located in the different sections of Florida, cannot be construed to be a store within the meaning of Subsection (g) of Chapter 16848, *supra*, and Lee v. The Cloverleaf, Inc., 130 Fla. 435, 177 So. 722. See also Lee v. Jacksonville Gas Co., 138 Fla. 890, 190 So. 800. Lee v. Hector Supply Co., 133 Fla. 95, 182 So. 613.

In the case of Security Feed & Seed Co. v. Lee, 138 Fla. 592, 189 So. 869, we had before us certain provisions of Chapter 16848, and Mr. Justice TERRELL, speaking for the Court, said: "We therefore hold that *unless sold by the producer or manufacturer,* all sales of baking products, dairy products, ice, insecticides, fungicides, fertilizer and agricultural or horticultural products or implements must bear the gross receipts tax." (Emphasis supplied.)

The record discloses that Smith was only the agent of the

Wilson & Toomer Fertilizer Company ostensibly engaged or employed on a commission basis to sell fertilizer manufactured by the fertilizer company, and, while the possession thereof passed to Smith, the title remained in the fertilizer company and before a sale on the deferred payment plan was completed, the consent or approval of the fertilizer company was necessary. The allegations of the bill show that Smith and Wilson & Toomer Fertilizer Company had paid all lawful taxes required, and as the same was admitted to be true on motion to dismiss, we fail to find error in the record.

The petition for a writ of certiorari is hereby denied.

TERRELL, C. J., WHITFIELD, BROWN, BUFORD and THOMAS, J. J., concur.