PHILLIPS PETROLEUM COMPANY, Appellee, v. FRED W. NELSON et al., Appellants.

No. 46009.

AUGUST 11, 1942.

John M. Rankin, Attorney General, and John E. Mulroney, Assistant Attorney General, for appellants.

Don Emery, Rayburn L. Foster, and Walter L. Barnes, all of Bartlesville, Okla., and Paul J. Parker, of Des Moines, for appellee.

STIGER, J.— In 1936 the Standard Oil Company filed its complaint in the District Court of the United States, southern district, central division, praying that the Iowa State Tax Commission be enjoined from applying the Iowa Chain Store Tax Act to its bulk-plant operations in Iowa. Plaintiff herein, with 13 other major oil companies, intervened in the suit, seeking similar relief. A consent decree was entered by a three-judge federal district court. The decree provided that it was not binding "either upon the intervener, Phillips Petroleum Company, or the defendants with respect to certain bulk plants owned or leased by the Phillips Petroleum Company in the State of Iowa at which a wholesale driver plan of operation prevailed during the period from July 1, 1935, up to and including the date of this decree, or a portion of said period."

The decree directed that the Phillips Petroleum Company and the defendants, members of the commission, present evidence relating to the applicability of the Chain Store Tax Act to bulk plants owned or leased by the company "upon which evidence the Court shall decide whether or not the said bulk plants at which there prevailed a wholesale driver plan of operation, as stated above, are bulk plants upon which the said Phillips Petroleum Company is bound by the terms of said Act to pay a chain store tax thereon, said question to be decided independently of the provisions of this decree."

All constitutional questions having been determined by the consent decree, the three-judge court was without further jurisdiction and directed that further proceedings be heard by Judge Charles A. Dewey of the United States District Court for the Southern District of Iowa, who determined the reserved issue.

Judge Dewey found for intervener Phillips Petroleum Company, and enjoined defendants from applying the Chain Store Tax Act to the 73 bulk plants of interveners involved in the suit. Defendants, members of the Tax Commission, appealed to the circuit court of appeals. Greene v. Phillips Petroleum Co., 8 Cir., Iowa, 119 F. 2d 466, 469. The appellate court, in reversing the case on a procedural question, said:

"This decision of the Supreme Court [Railroad Commission of Texas v. Pullman Co., 312 U. S. 496, 61 S. Ct. 643, 85 L. Ed. 971] requires, as we understand it, in a case such as this—where the question upon which the case turns is one of state law as yet undetermined by the courts of the state and affecting an important state policy such as that of taxation—that the federal district court as a court of equity must, in the exercise of a wise discretion and because of ' "scrupulous regard for the rightful independence of the state governments" and for the smooth working of the federal judiciary' (Id., [page 501 of 312 U. S.] page 645 of 61 S. Ct.), stay its hands, provided that the situation is such that a definitive determination of the issue of state law may be obtained by the parties through recourse to the state courts. We gather that the exercise of this discretion is a matter of judicial policy which can not be controlled by the wishes or agreements of the parties litigant.

"That recourse may be had to the courts of Iowa by the parties, for the purpose of securing a definitive ruling, is obvious. * * *

"Upon the authority of Railroad Comm'n of Texas v. Pullman Co. [312 U. S. 496, 61 S. Ct. 643], we remand this case to the court below, with directions to retain the bill pending a determination of proceedings, to be brought with reasonable promptness, in the state court in conformity with this opinion."

Thereafter, plaintiff commenced this suit which resulted in

a decree in favor of the plaintiff, from which defendants have appealed.

I. The question is whether the Chain Store Tax Act is applicable to the approximately 73 bulk plants of plaintiff operated under the wholesale-driver plan. The act became effective May 9, 1935.

We will set out the portions of the Chain Store Tax Act material to this appeal:

"6943.129 Tax imposed. There is hereby imposed upon every person within the state of Iowa engaged in conducting a business by a system of chain stores from any of which stores are sold or otherwise disposed of at retail tangible personal property such as goods, wares, and merchandise an annual occupation tax * * * "

"6943.127 Definitions. * * *

"7. 'Conducting a business by a system of chain stores' when used in this chapter shall be construed to mean and include every person, as defined in this chapter, in the business of owning, operating or maintaining, directly or indirectly, under the same general management, supervision, control or ownership in this state, and/or in this state and any other state, two or more stores, where goods, wares, articles, commodities, or merchandise of any kind whatsoever are sold or offered for sale at retail and where the person operating such store or stores receives the retail profit from the commodities sold therein. * * *

"6. 'Store' means any store or stores, or any mercantile or other establishment in which tangible goods, wares or merchandise of any kind are sold or kept for sale at retail.

"4. 'Retail sale' or 'sale at retail' means the sale to a consumer or to any person for any purpose, other than for resale, of tangible personal property including goods, wares and merchandise."

The tax is imposed upon every person conducting a business by a system of chain stores if merchandise is sold at retail "from any of which stores." Section 6493.129. Section 6943.127, paragraph 7, defines conducting a business by a system of chain stores to mean operating or maintaining two or more stores

''where goods, wares, articles, commodities, or merchandise of any kind whatsoever are sold or offered for sale at retail and where the person operating such store or stores receives the retail profit from the commodities sold therein.''

Section 6943.127, paragraph 6, defines a store as a store or establishment in which merchandise is sold or kept for sale at retail.

The intention of the legislature, clearly expressed in the above sections of the act, was to impose the tax if goods, wares, and merchandise were sold or offered for sale at the stores at retail, that is, a sale at the store or on the premises to a consumer or for any other purpose other than for resale, the person operating the store receiving the retail profit from commodities sold in the store.

The language of the statutes is plain and its meaning clear. But if it be conceded that there is some uncertainty as to the legislative intent, the universal rule is that tax laws are to be interpreted liberally in favor of taxpayers, and that doubt in respect to the meaning and scope of language imposing a tax must be resolved in favor of the taxpayer.

If appellee did not sell or offer to sell merchandise at the several bulk plants at retail, or keep merchandise for sale at retail therein, then it is not subject to the occupation tax. We will briefly review the evidence bearing on this question.

The bulk-storage plants were in charge of agents, appointed under commission contracts, who employed their assistants.

Sales made from truck tanks to service-station dealers were for resale and are not involved in this litigation. The sales and deliveries of gasoline and other products material to this appeal were by truck-tank amounts to commercial consumers, under written contracts, and by truck tank to farmers, all such sales being at tank-wagon prices.

Prior to the act, the agent hauled gasoline and other products by truck through his country territory, and sold and delivered the merchandise direct to farmers at their homes. A short time before the act went into effect in 1935, appellee, to avoid the tax if truck-tank sales and deliveries to farmers were retail sales which subjected it to the provisions of the act,

inaugurated a wholesale-driver plan at bulk-storage plants where two or more tank trucks were in operation. Under this plan, the agent would sell to the second driver at wholesale, and he in turn sold direct to the farmers at their homes at tank-wagon prices.

The large majority of sales to farmers were made by soliciting and making sales in the drivers' territory to them at their homes. However, farmers who desired to purchase merchandise could telephone to the home of the agent or second driver, requesting the driver when on his route to stop at their homes. No sales or deliveries to farmers or commercial consumers were made on the premises.

The bulk-storage plants were situated out of the retail business district and adjacent to railroad spur tracks. There were no paving or sidewalks leading to the plants and they were without telephone, lighting, heating, and retail dispensing facilities. The plants were locked except when merchandise was being unloaded from railroad tank cars to the storage tanks or from the storage tanks to the truck tanks. No merchandise was displayed for sale at the warehouses. Since the act went into effect the following placard has been posted at all bulk-plant warehouses:

"This Is a Warehouse and No Retail Sales
Will Be Made on the Premises.
Phillips Petroleum Co."

There is no record of a consumer purchasing commodities at a bulk-storage plant.

The retail sales were made off the premises and were tank or truck-wagon sales and deliveries, the merchandise being purchased and paid for at the time of delivery.

We will refer briefly to the wholesale-driver plan. The agent billed all merchandise for sale to farmers to the wholesale driver for the purpose of resale by him to farmers. The agent selected the wholesale driver, whose profit was the difference between the wholesale price paid appellee and the price at which he sold to the farmers. The drivers furnished their own trucks or rented them from the agent, obtained their own retail tax permits, did not participate in any of appellee's employee-benefit plans and no social-security tax was paid by appellee on

the wholesale drivers. In some of the plants the drivers paid cash for commodities on delivery.

Appellee claims the sales to the wholesale drivers were actual sales at wholesale, while appellants claim the arrangement was a fictitious sale, a change in form and not in substance, and that the plan did not change the general method of selling at retail to farmers by the bulk agent, which existed prior to 1935.

It is unnecessary for us to pass on this issue, for if the plan were a subterfuge, all sales under the plan were made off the premises.

As no merchandise was sold, offered for sale, or kept for sale at retail on the premises, as appellee received no retail profit from commodities sold in the plants, because no sales were made therein, the bulk-storage plants or warehouses involved in this suit are not stores within the statutory definition and are not subject to the chain-store tax. Appellee, in operating its 73 bulk-storage plants in the manner shown by the record was not engaged in conducting a business by a system of chain stores from which merchandise was sold at retail within the meaning of section 6943.129.

Appellants' contention that the act, when properly construed, does not limit it to places where retail sales are made on the premises cannot be sustained.

They cite Fox v. Standard Oil Co., 294 U. S. 87, 95, 55 S. Ct. 333, 336, 79 L. Ed. 780, 786, and Lee v. Hector Supply Co., 133 Fla. 95, 182 So. 613.

We are of the opinion the cited cases tend to sustain our construction of the act. The definition of a "store" in the West Virginia Chain Store Tax Act is quite similar to its definition in the Iowa act. In holding that the bulk plants and filling stations of defendant were, under the evidence, "stores" as defined by the West Virginia act, the court, in Fox v. Standard Oil Co., supra, said:

"There is no doubt that goods, wares and merchandise of a kind, i. e., gasoline and other petroleum products, and even tires and other automobile accessories, *are sold by the complainant and its agencies at its plants and service stations.* This satisfies

the test of the statute, and subjects the seller to the tax." (Italics supplied.)

In Lee v. Hector Supply Co., supra, at page 109 of 133 Fla., page 618 of 182 So., the Chain Store Tax Act provided:

"The term 'store' as used in this Act shall be construed to mean and include any store or stores of any mercantile establishment or establishments * * * in which goods, wares or merchandise of any kind are sold or offered to be sold at retail."

The court said at page 112 of 133 Fla., page 619 of 182 So.:

"Retail sales made by plaintiffs in the building or buildings occupied by them, under the circumstances alleged, are made in a 'store' or 'stores' within the meaning of Section 2 (g) of the Act, Chapter 16848, Acts of 1935."

In this case the sales were made directly from storage depots or warehouses.

Appellants state that if we construe the act to apply to retail sales at the premises, there is danger that such a construction would destroy the constitutionality of the Iowa Chain Store Tax Act, under section 6, Article I of the Iowa Constitution, which requires that laws of a general nature have a uniform operation.

The function of this court is to correctly construe the act, and if, when so construed, it is unconstitutional, such result is beyond the scope of our present inquiry.

In Iowa Pub. Serv. Co. v. Rhode, 230 Iowa 751, 754, 298 N. W. 794, 796, Justice Garfield, speaking for the court, said:

"Without passing on whether the dire consequences which counsel anticipate will result from construing the section in question according to the plain meaning thereof, it is a sufficient answer that this is also an argument to be addressed to the legislature and not to the courts. As said in In re King's Estate, 105 Iowa 320, 325, 75 N. W. 187, 189:

" 'If the legislative intent is clear, we have nothing to do with consequences; but, if the statute is ambiguous or obscure, we may well and properly consider results, in interpreting it.' "— Affirmed.

All JUSTICES concur.