**MONTGOMERY WARD & CO., Inc., v. STATE.**

**No. 9322.**

Court of Civil Appeals of Texas. Austin.

March 17, 1943.

Rehearing Denied April 7, 1943.

Goldsmith & Bagby, of Austin, and John A. Barr and Harvey L. Hensel, both of Chicago, Ill., for appellant.

Gerald C. Mann, Atty. Gen., Billy Goldberg, Asst. Atty. Gen., and Cecil C. Rotsch, Asst. Atty. Gen., for appellee.

BLAIR, Justice.

The State of Texas sued Montgomery Ward & Company, Inc., for $57,002.53, as chain store taxes, and recovered judgment therefor; which we affirm.

Appellant company is an Illinois corporation with a permit to do business in Texas, where it owns, controls, and operates as an integrated business system three kinds or places of business through which it sells more than 100,000 different items of merchandise to the public. They are: (1) a wholesale mail order house at Fort Worth; (2) several ordinary retail stores; and (3) several "order offices." Appellant paid all taxes due on its wholesale house and on its ordinary retail stores, but refused to pay taxes on its "mail order offices," contending in the court below and here that they were not "a store or stores or any mercantile establishment or establishments * * * in which goods, wares, or merchandise of any kind were sold, at retail or wholesale," as defined by Art. 1111d, Vernon's Annotated Penal Code of Texas; which is the only question presented on this appeal.

As to the character of business done at the mail order offices, the stipulated facts show that:

"V. * * * Each of such 'mail order offices' consisted of a room or building facing a street in the business section of a town which room or building was rented by Montgomery Ward & Co., Incorporated, from the title owner thereof, by a lease contract giving Montgomery Ward & Co., Incorporated, control thereof, and in each of which was located either desks or tables upon which there were several of the regular 'Montgomery Ward & Co., Incorporated, Mail Order Catalogs.' These catalogs, which are identical with those distributed to the defendant's regular mail order customers, are bound volumes containing more than 700 pages which illustrate and describe more than 100,000 items which are carried in stock at the Fort Worth mail order house for the purpose of sale by mail. Such catalogs inform the customers that orders must be sent to the company's mail order house at Fort Worth, Texas, for acceptance, and that the merchandise ordered will be shipped from there, or, in certain cases, from the fac-

tories at which the merchandise was manufactured. Also stationed in each of said mail order offices was one or more employees of said company. No merchandise of any kind was ever stocked for sale in any of said mail order offices. On numerous occasions stoves, refrigerators, tires and radios, were placed in said mail order offices, but such articles were placed there only for display purposes and no sales of the same were ever made at any of the mail order offices.

"VI. During all of the times in question aforementioned customers came in to each of said mail order offices and ordered merchandise through such catalogs from the company's Fort Worth, Texas, mail order house. The sales resulting from such orders were made in the following manners:

"In all cases of a customer ordering merchandise through an order office, the customer may make out an order or the company's employee at such office may assist the customer in making out his order. All orders received through the company's Texas mail order offices are forwarded to the company's mail order house at Fort Worth, Texas, where they are accepted or rejected, and, if accepted, the merchandise ordered is segregated and appropriated to the customers' orders, and the merchandise is shipped in accordance with the customers' instructions contained in their orders. All sales resulting from orders received and forwarded by said order offices are recorded on the books and records of the company as sales of the Fort Worth mail order house.

"The sales resulting from such orders may be (1) cash sales, (2) c. o. d. sales, or (3) credit sales. If it is to be a cash sale, the customer will deposit with the company's employee at the order office the purchase price, plus transportation charges. If it is to be a credit sale, the customer will deposit with the employee at the order office a down payment. Customers purchasing merchandise for credit will ordinarily make payments on their accounts to the order office receiving the order which resulted in the sale; however, such customers may make payments upon their accounts at any of the company's order offices, mail order houses, or retail stores located anywhere in the United States. If it is to be a c. o. d. sale, no money is deposited with the employee of the company at the order office. On c. o. d. sales pay-

ment is made by the customer to the carrier or post office if shipment of the merchandise is made direct to the customer, or, if the customer has requested that the merchandise be sent to him in care of the order office, the purchase price, plus the transportation charges are collected from the customer at the time the customer calls for his merchandise at the order office.

"Merchandise sold as a result of orders received at said order offices may be shipped (1) direct to the customer or (2) to the customer in care of the order office through which the order was received, as requested by the customer. Some customers desire that the merchandise be sent direct to them. In such cases the merchandise is packaged and wrapped at the mail order house. The customer's name and address is placed upon the package and delivered by the mail order house to the carrier for delivery direct to the customer. Other customers desire that the merchandise be sent to the order office for them. Here also, the merchandise is packaged and wrapped at the mail order house. The customer's name and address is placed upon the package and delivered by the mail order house to the carrier for delivery to the customer in care of the order office. Where a number of orders of customers requesting that the merchandise be sent to the order office are received by the Fort Worth mail order house from an order office at the same time, the packages of merchandise for the various customers, which are separately wrapped and each marked with the name and address of the individual who ordered that particular package, will sometimes be consolidated into one bundle, and shipped to the mail order office from which the orders were forwarded. When such bundles are received at the order office they are unpacked and the individual packages on which the names and addresses of the respective customers appear are held until such time as the purchasers call for their merchandise.

"In all cases transportation charges are paid by the customer.

"Customers requesting that the merchandise be shipped direct to them, as well as customers requesting that the merchandise be sent to them in care of the order office through which the order was received, may open their packages and examine the merchandise. All customers who are not satisfied with the merchandise may return it to the mail order house. The

customers who opened their packages at said mail order offices, and who were not satisfied with the merchandise ordered, did not take the merchandise, but left it at the mail order office and the company's employee returned it to the mail order house. If said customers had previously paid such amount due on such merchandise, their money was refunded to them. All of the company's catalogs including those kept in the order offices, contain the following written guarantee under which such returns of merchandise are permitted:

" 'We guarantee complete satisfaction or your money back. Whatever you may buy from us must please you in every way— or you may return it at our expense and we will either exchange it for what you want or refund all you paid, including any transportation charges paid by you.' "

Appellant contends that its order offices are not taxable as stores under the statute unless a sale of merchandise takes place in them; and that this happens only if title to the merchandise passes at the order offices. This contention is based upon the claim of appellant that all sales of merchandise originating in the order offices were made upon written orders of customers subject to acceptance or rejection by its wholesale mail order house at Fort Worth; and that while these sales contracts do not expressly provide when title to the merchandise would pass the parties thereto intended that title should pass when the mail order house segregated the merchandise at Fort Worth, or when the merchandise was delivered to the carrier at Fort Worth under agreement with the customers to pay the freight charges thereon. This contention is contrary to the facts stipulated, which show that the parties intended that title to all merchandise should pass when the customers examined and were satisfied with the merchandise and accepted it.

The guarantee under which all merchandise is sold by the order offices provides that the customer must be satisfied; that if he is not, he may return the merchandise at the expense of appellant; and that all amounts paid on the merchandise, including freight charges, will be refunded. It is stipulated that all merchandise ordered through the order offices is paid for at the time the order is taken at the order offices under two plans of payment, and at the time of delivery under the C. O. D. plan with agreement that after examination of

the merchandise "all customers who are not satisfied with the merchandise may return it"; and that when "the customers who opened their packages at said mail order offices and were not satisfied," they did not take the merchandise, but left it at the mail order offices for the employees of appellant to return to the mail order house; and the customers were at the time refunded all payments made on the merchandise, including freight charges. When the merchandise was examined and approved by the customers at the mail order offices, it was there delivered to them, which delivery completed the sale transactions. Merchandise ordered on the C. O. D. plan of payment was paid for at the time of delivery at the order offices; and merchandise ordered on the partial payment, or on the cash payment plans was paid for at the time the order for the merchandise was taken, and after approval by the customers the merchandise was delivered to them at the order offices. Under these facts, except for the time necessary to order the merchandise from the wholesale house for delivery at the order offices on approval and acceptance of the merchandise by the customers, there is no fact or circumstance which distinguishes such transactions from transactions that take place where merchandise of any kind is sold in any ordinary store or mercantile establishment. The order offices are therefore stores or mercantile establishments within the meaning of the statute which imposes the tax on "any store or stores or any mercantile establishment or establishments * * * in which goods, wares or merchandise of any kind are sold, at retail or wholesale." And this is true whether the statute is construed in its broadest sense as imposing the tax on any store or mercantile establishment where a completed purchase is made, with agreement to deliver the merchandise directly to the purchaser, or whether the statute is construed in a more limited sense as imposing the tax on the store or establishment where the purchase and delivery of the merchandise actually take place, and at which time and place title to and possession of the merchandise actually take place.

The only purpose of the order offices is to ultimately sell to the customers who patronize it the merchandise of appellant. They are places where samples of merchandise are displayed and where catalogs containing more than 100,000 items of

merchandise are offered for sale by order under the interrelated and interdependent chain store business of appellant. The making of the order, the payment of the purchase price of the merchandise, and the delivery of the merchandise after approval and acceptance by the customer all take place in many instances in the order offices. In other instances all transactions are completed in the order offices except that the merchandise is to be delivered directly to the customer instead of being first delivered to the order offices; and as to these transactions title to the merchandise does not pass until the customer has examined and accepted it. With respect to this kind of sale the case of Lee v. Hector Supply Co., 133 Fla. 95, 182 So. 613, 615, wherein the court construed a statute identical with ours, is in point. In that case the court was construing the identical Florida statute to determine whether a single sale of a product made in one of plaintiffs' stores in Florida, which product was not in stock, but was ordered from plaintiffs' manufacturers in another state, to be delivered directly to the purchaser in Florida, was an interstate transaction, which could not be burdened with the tax, and the court say:

"In other words, the only part of a transaction of this type that differs in any respect from a completed purchase made in plaintiffs' store by delivery of the purchased article then and there to the purchaser, is the fact that the product ordered from such manufacturer, dealer or jobber is delivered directly to the purchaser instead of first being delivered to the plaintiffs and then delivered by the plaintiffs to the purchaser. How can the fact that delivery is made in this manner alter the status of a sale already agreed upon, so that the seller can avoid payment of the Tax?"

\* \* \* \* \*

"We think the above quoted authorities demonstrate that such transactions do not place a direct burden on interstate commerce, that the transactions are completed in plaintiffs' store or stores, and that plaintiffs, and no other, are liable for the taxes thus imposed. \* \* \*"

In the instant case, where orders were taken for merchandise on the partial payment plan or the cash payment plan, payments therefor were made at the order offices, and the merchandise was delivered directly to the purchasers, who had the right to examine the merchandise and return the goods if not satisfactory at the expense of appellant, who agreed to refund all payments made, including freight charges. With respect to C. O. D. orders, the purchaser had the right to examine the merchandise and to reject it, if not satisfactory, and to refuse to receive it from the carrier, which returned it to appellant. Where purchaser accepted the C. O. D. shipment he paid the carrier the purchase price plus freight charges, and the merchandise was then delivered to him. So, it is manifest that where merchandise is ordered through the order offices with delivery directly to the purchaser under either payment plan, the sale is completed as concerns appellant at the order offices. All that is left to be done is the delivery and acceptance by the customer. And to borrow the language of the Florida decision, "how can the fact that delivery is made in this manner alter the status of a sale already agreed upon," be material on the question of where the sale of the merchandise took place. We think that under the facts stated the transactions of buying and selling of merchandise take place at the order offices, and that they are stores or mercantile establishments in which merchandise is sold at retail within the meaning of our taxing statute.

We are clear in the view that if the taxing statute is construed in the most limited sense of imposing the tax only on a store or mercantile establishment in which the purchase and delivery of merchandise actually takes place, then the order offices come clearly within the statute with respect to all instances where the merchandise ordered is shipped to the order offices with the right of the customers to examine and accept it, or to reject it if not satisfactory. This is under the settled rule that "when a contract plainly contemplates that the goods shall be approved or accepted by the buyer before he shall be liable for the purchase price, title does not pass until they are approved and accepted." 37 Tex.Jur. 459; Oliver v. Gallagher, 119 Tex. 178, 26 S.W.2d 903; Williams v. Mutual Motor Co., Tex.Civ.App., 67 S.W.2d 905. The facts with respect to these transactions are stated both in the stipulated facts and in our analysis of the facts, and will not be restated here. Under such facts there is nothing to distinguish the transactions at the order offices from the ordinary transactions which take place where merchan-

dise is sold in any retail store, except for the time necessary to order the merchandise from the wholesale house for delivery at the order offices on approval and acceptance of the merchandise by the customers at the order offices. There is where the merchandise is ordered, examined, and approved, and accepted, and paid for, in many instances: These facts bring the instant case within the test made by the Supreme Court in the case of Hurt v. Cooper, 130 Tex. 433, 110 S.W.2d 896, 904, where in discussing the meaning of the word "store" as used in the statute under consideration, the court says:

"The statute having defined the word, we are not concerned with its usual meaning. * * * a mercantile establishment at which no sales are made is not a store, and therefore not taxable. The test is whether sales of goods, wares, or merchandise are made at the place."

The judgment of the trial court is affirmed.

Affirmed.