COMMONWEALTH *vs.* MICHAEL HANA..

SAME *vs.* RASHEED A. SHAGOURY.

Hampden.    February 26, 1906. — May 13, 1907.

Present: KNOWLTON, C. J., MORTON, HAMMOND, SHELDON, & RUGG, JJ.

*Hawkers and Pedlers.    Practice, Criminal.    Constitutional Law.    Words,*
"Exposing for sale."

On a complaint under R. L. c. 65, § 13, charging the defendant with being a hawker
and pedler and with exposing for sale certain goods without a license, the words
"exposing for sale" as used in the statute are satisfied by proof that the pedler
had with him in his hand, in the presence of the person whom he solicited to buy,
goods which he referred to in his conversation as contained in a receptacle that
he was carrying and which he offered to exhibit for the purpose of making a sale,
although the offer was refused and the goods remained concealed from view by
the receptacle that contained them.

When a case involves the punishment of the defendant for a crime, the constitu-
tionality of the statute authorizing the prosecution may be questioned at any
stage of the proceedings.

The requirement of R. L. c. 65, § 19, that a license as a hawker and pedler shall
be granted only to a person who is or has declared his intention to become a
citizen of the United States, is constitutional as a reasonable exercise of the
police power.

In R. L. c. 65, § 19, as amended by St. 1905, c. 204, authorizing the granting of licenses
to hawkers and pedlers, the provision that " a licensee resident in a city or
town, in which he pays taxes upon his stock in trade and is qualified to vote,
shall pay as a fee to the treasurer of said city or town the amount, if any, by
which the said license fee exceeds the amount paid by him to said city or town
as taxes on his stock in trade assessed on the first of May previous to the
date of said license," is unconstitutional as discriminating in favor of such
residents.

The provision of R. L. c. 65, § 21, that a license as a hawker and pedler may be
granted " to any person seventy years of age or upwards without the payment
of any fee therefor" is unconstitutional as discriminating in favor of such
persons.    Whether the similar discrimination provided by the same section in
favor of " any soldier or sailor resident in this Commonwealth who served in
the army or navy during the war of the rebellion or the war against Spain and
who has received an honorable discharge from such service" also is unconstitu-
tional, was not passed upon because it was not referred to in the argument.

The whole statute contained in R. L. c. 65, §§ 13–29, in regard to the licensing of
hawkers and pedlers, as it stood before its amendment by St. 1906, c. 345, was
made unconstitutional by the provisions of §§ 15, 16, discriminating between
agricultural products of the United States and agricultural products of other
countries, it being impossible to say what the Legislature would have done in
regard to the other provisions of the statute if they had noticed that the dis-
crimination in regard to agricultural products was unconstitutional.

KNOWLTON, C. J.   Each of these defendants was found guilty upon a complaint made under the R. L. c. 65, §§ 13–29, as amended by the St. 1905, c. 204, charging him with being a hawker and pedler and with exposing certain goods for sale without any authority or license therefor.   The. evidence was substantially the same in both cases, which are before us on exceptions of the defendants.

The first question is whether the evidence warranted a finding that the defendant exposed the goods for sale.   In each case the defendant called at a house and showed his card to a lady who resided there, which gave his name and described him as an importer and dealer in shirt waists, laces of several stated varieties, silk shawls, art work, embroideries, oriental rugs and several other specified articles.   Each of the defendants had in his hand a dress suit case.   Hana said to the lady, " I have some very nice laces that I would like to show you. . . . I would be glad to have you look at them."   She had previously told him it would do him no good to show her what he had to sell and that she did not want to buy.   She refused to look at his goods.   There was a similar interview and substantially the same conversation between another lady and the other defendant at another house.   An examination of the contents of the dress suit case of each defendant showed that he had a miseellaneous collection of kimonos, laces, table spreads and similar articles of cloth or needlework.   The dress suit case was not opened at either house.

The meaning of the words " exposing for sale " differs somewhat in different statutes in reference to the purpose which the statute was intended to accomplish.   In *Crane* v. *Lawrence*, 25 Q. B. D. 152, the court said : " The word ' exposed,' which is the word used in § 6, may have different meanings according to the circumstances of the different cases in which it is used ; it may mean exposed to the air ; it may mean exposed to water ; it may mean exposed to view. . . . It is clear that the intention of the statute is that there shall be an exposure to the purchaser, in order that he may see what the article is, and may know what he is buying," etc.   See also *Commonwealth* v. *Byrnes*, 158 Mass. 172.   On the other hand, in *Wheat* v. *Brown*, [1892] 1 Q. B. 418, it was held under the same statute that margarine

when wrapped in paper so as to be invisible to the purchaser, might be exposed for sale within the meaning of the act. Wright, J. said in the opinion : " The expression ' exposed for sale,' is a well understood term, and cannot be limited so as to mean only ' exposed to view.' " We think the words " exposing for sale " in the statute before us, are satisfied if a pedler has with him in his hand, in the presence of one whom he solicits to buy, goods which he refers to in his conversation as contained in a receptacle that he is carrying, which goods he offers to exhibit for the purpose of making a sale, even though they are at the time concealed from view by the receptacle that contains them. The jury were warranted in finding that the goods were exposed for sale.

The defendants excepted to an instruction to the jury that, upon finding certain facts referred to in the statute, they would be warranted in returning a verdict of guilty, and they now call in question the constitutionality of the statute. When a case involves the punishment of the defendant for a crime, the constitutionality of the statute authorizing the prosecution may be questioned at any stage of the proceedings. In *Commonwealth* v. *Caldwell,* 190 Mass. 355, this statute was held unconstitutional in that part which discriminates between agricultural products of the United States and agricultural products of other countries, in reference to the requirement of a license to peddle them ; but it was not determined whether the statute was constitutional in other particulars, nor whether its validity in this particular rendered it wholly void. After this decision this part of the law was amended by the St. 1906, c. 345, which took effect on June 2, after the trial in the District Court upon the complaints now before us. The constitutionality of the statute is also attacked on other grounds.

Under § 19, no one can obtain a license unless he is, or has declared his intention to become a citizen of the United States. It is contended that this provision is in violation of the Fourteenth Amendment to the Constitution of the United States which provides that no State shall " deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." It is decided that this provision applies to aliens as well

as to citizens of the United States, and it is clear that a statute arbitrarily forbidding aliens to engage in ordinary kinds of business to earn their living would be unconstitutional and void. *Yick Wo* v. *Hopkins*, 118 U. S. 356. *In re Ar Chong*, 2 Fed. Rep. 733. *In re Lee Sing*, 43 Fed. Rep. 359. *Pearson* v. *Portland*, 69 Maine, 278. Accordingly, it was held in an elaborate opinion in *State* v. *Montgomery*, 94 Maine, 192, that a statute for the licensing of hawkers and pedlers in that State was unconstitutional and wholly void, because of a discrimination between aliens and citizens, like that in our statute. See also *State* v. *Mitchell*, 97 Maine, 66. There is, however, an important question which was not much discussed in that case, Whether the Legislature, in the exercise of the police power, could discover a reason for withholding pedlers' licenses from aliens. The business of peddling furnishes such opportunities for the practice of fraud that it is a proper subject for legislative regulation. That such regulation has been practised from early times, both in Europe and America, is shown at length by Mr. Justice Gray in *Emert* v. *Missouri*, 156 U. S. 296. The requirement of R. L. c. 65, § 19, that before receiving a license the applicant shall file a certificate from the mayor of a city or the majority of the selectmen of a town that to the best of his or their knowledge and belief he is of good repute for morals and integrity, is a reasonable regulation for the protection of the public. If, in the same interest, the Legislature deems it important that licenses shall be granted only to citizens of the United States, or to those who have declared their intention to become citizens, it can hardly be said that they have exceeded their constitutional right in passing a law to that effect. Upon a similar question in reference to the granting of licenses to sell intoxicating liquors, decided in *Trageser* v. *Gray*, 73 Md. 250, 254, 255, 257, the court used this language : " It was thought proper to confine the license to citizens of the United States, of temperate habits and good moral character. The privilege is very liable to be abused, and abuses would produce great public detriment. It therefore seemed wise to the Legislature to confer it only on those who, being natives of the country, might reasonably be supposed to have a regard for its welfare ; or who, not being natives, had, as required by the naturalization law, proven by

credible testimony before a court of justice, that they were attached to the principles of the Constitution of the United States, and were well disposed to their good order and happiness. It was certainly the function of the law-making department to exercise its judgment on this question, and this court has no right to criticise its conclusion." The opinion then goes on to say that the right so to legislate is within the police power reserved to the States, and after a full discussion, to declare that it is not at variance with the Fourteenth Amendment to the Constitution of the United States. The same reasoning is equally applicable to the granting of licenses to hawkers and pedlers. Indeed, the nature of their business is such that their possession of a domicil and citizenship in this country might be important to those seeking remedies for wrongs done in their business. Notwithstanding the decision in *State* v. *Montgomery*, 94 Maine, 192, we are of opinion that the Legislature, in the exercise of the police power, might make this requirement as to the qualifications of applicants for a pedler's license.

The defendants also contend that the statute is unconstitutional in making a discrimination in § 19 by which a resident, in a city or town in which he pays taxes upon his stock in trade and is qualified to vote, shall not be required to pay any fee for his license for said city or town. There is also a provision in § 21, which has not been referred to in the argument, by which licenses may be granted without charge to a person seventy years of age or upwards, or to any soldier or sailor resident in this Commonwealth who served in the army or navy during the war of the rebellion or the war against Spain, and who has an honorable discharge from such service. Even before the adoption of the Fourteenth Amendment it was a settled principle of constitutional law that statutes in regard to the transaction of business must operate equally upon all citizens who desire to engage in the business, and that there shall be no arbitrary discrimination between different classes of citizens. Under the Fourteenth Amendment, all persons are entitled to the equal protection of the laws. In several States such a discrimination in the granting of licenses in favor of soldiers and sailors has come before the courts, and in all of them, so far as we are aware, the provision has been

held unconstitutional. *State* v. *Shedroi,* 75 Vt. 277. *State* v. *Garbroski,* 111 Iowa, 496. *State* v. *Whitcom,* 122 Wis. 110. See also *In re Keymer,* 148 N. Y. 219; *Brown* v. *Russell,* 166 Mass. 14.

These cases and others show that a discrimination, founded on the residence of the applicant for a license or the amount of tax paid by him, cannot be sustained under the constitution. *State* v. *Mitchell,* 97 Maine, 66. *State* v. *Gardner,* 58 Ohio St. 599. *Commonwealth* v. *Snyder,* 182 Penn. St. 630. *State* v. *Hoyt,* 71 Vt. 59. *In re Ar Chong,* 2 Fed. Rep. 733. *In re Lee Sing,* 43 Fed. Rep. 359. *Ex parte Jones,* 38 Tex. Cr. 482. We see no justifiable ground, under the Constitution, for a discrimination in favor of residents of a city or town who pay taxes there on their stock in trade, and who are qualified to vote there, nor of those who are seventy years of age or upwards. As the discrimination in favor of former soldiers and sailors was not referred to in argument, it is unnecessary to pass upon it; but as we have already seen, a similar discrimination has been held unconstitutional in other States.

If the objectionable parts of the statute were separable from the rest in such a way that the Legislature would be presumed to have enacted the valid portion without the invalid portion, the statute would be enforced in those parts that are constitutional. *Edwards* v. *Bruorton,* 184 Mass. 529. *Commonwealth* v. *Petranich,* 183 Mass. 217. *Commonwealth* v. *Anselvich,* 186 Mass. 376, 379. In this case it is impossible to determine what the Legislature would have done if they had noticed that the discrimination between agricultural products of the United States and agricultural products of other countries was unconstitutional. Whether they would have permitted all agricultural products to be peddled without a license, or would have forbidden the peddling of any agricultural products without a license, we have no means of knowing.

The amendment by the St. 1906, c. 345 was made after an interval of many years, and it cannot be used to show the intention of the framers of the original act. It might be argued that there is uncertainty as to the legislative intent, if we strike out other objectionable features of the statute. Whether such an argument would prevail it is unnecessary to

decide in this case, as the discrimination in regard to agricultural products rendered the entire act invalid at the time when the alleged misdemeanors were committed.*

We are of opinion that the statute cannot be enforced against these defendants, and in each case the entry must be

*Exceptions sustained.*

The case was submitted on briefs.

*R. J. Talbot,* for the defendants.

*J. F. Noxon,* District Attorney, for the plaintiff.