# I. T. WRIGHT and Another v. H. K. MAY.[1]

October 9, 1914.

Nos. 18,781—(261).

**Auctioneer's license — act valid.**
    The statutes of this state (G. S. 1913, §§ 6083 to 6088), providing that the county board or auditor may license any voter in its county as an auctioneer, and providing a penalty for selling property at auction without such license, violate neither section 2, art. 4, of the Constitution of the United States, section 1 of Fourteenth amendment to the Constitution of the United States, or section 2, art. 1, of the state Constitution, nor are they invalid as delegating legislative power to the county board or county auditor.

    Action in the district court for Yellow Medicine county to recover $64.02 for services as auctioneers. From an order sustaining defendant's demurrer to the complaint, Qvale, J., plaintiffs appealed. Affirmed.

*Johnson & Lende,* for appellants.
*T. J. Law,* for respondent.

BUNN, J.
    Plaintiffs, who were residents of South Dakota, performed services for defendant at his request as auctioneers. Defendant resides in Yellow Medicine county, Minnesota, and the services were performed in the sale in that county of personal property of defendant. This action was brought to recover $64.02, the agreed price of such services. A demurrer to the complaint was sustained and plaintiffs appealed.
    The sole question involved is the constitutionality of G. S. 1913, §§ 6083 to 6088. Section 6083 provides that the county board or

[1] Reported in 149 N. W. 9.

Note.—Discrimination against nonresidents by statute or ordinance imposing license tax on auctioneers, see note in 40 L.R.A.(N.S.) 290.

auditor may license *any voter in its county* as an auctioneer. Section 6088 provides:

"If any person shall sell or attempt to sell any property at auction without being licensed as an auctioneer as herein provided, he shall be guilty of a misdemeanor."

It is plain that plaintiffs, being residents of South Dakota, were not and could not be licensed as auctioneers as provided by the act. If the statutory provisions referred to are constitutional, plaintiffs concede they are not entitled to recover for their services. If the provisions are unconstitutional, it is clear that the complaint states a cause of action.

The constitutional provisions which it is claimed the law violates are: Section 2, art. 4, of the Constitution of the United States, providing that the citizens of each state shall be entitled to all the privileges and immunities of citizens in the several states; section 1 of the Fourteenth amendment, providing that no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor deny to any person within its jurisdiction the equal protection of the laws; section 2, art. 1, of the Constitution of Minnesota providing that "no member of this state * * * shall be * * * deprived of any of the rights or privileges secured to any citizen thereof."

The law in question denies the right of privilege of engaging in the occupation of auctioneer to all but voters. It excludes nonresidents of the state and residents who are aliens.

It is conceded that the business or calling of an auctioneer is one that is subject to legislative regulation. It is equally true, on the other hand, that the business is a lawful and useful one. City of Mankato v. Fowler, 32 Minn. 364, 20 N. W. 361; City of Duluth v. Krupp, 46 Minn. 435, 49 N. W. 235; Village of Minneota v. Martin, 124 Minn. 498, 145 N. W. 383. The right to regulate and license the business of auctioneering does not include the right to prohibit, but, as stated by Mr. Justice Holt in the case last cited, "it is nevertheless true that frequently individuals must subordinate their rights to a certain extent to the demands of the public welfare." As pointed out in the opinion in the Martin case, the occupation

of the auctioneer, like that of the peddler, is liable to abuse, and in our large cities has become more or less of a nuisance, requiring regulation to the point of restraint.

Granting to the legislature, as we must, the right to regulate and control the vocation of auctioneering, to require a license and the payment of a substantial fee therefor, to limit the number of persons employed in such business, to require a bond, and an accounting, we see that regulation may go far without transgressing any constitutional safeguard of the rights of the individual. However the right of the individual to engage in the business may not be taken from him under the guise of regulation. Nor may the legislature authorize a license to one man and deny it to another, unless there is some reasonable ground for the distinction, unless, in short, licensing the second might reasonably result in harm to the public.

There are important distinctions between the business of an auctioneer and that of a peddler. The auctioneer does not sell his own goods; he acts, in making a sale at auction, primarily as the agent of the seller; when the property is struck off, he becomes also the agent of the purchaser, at least to the extent of binding him by his memorandum of sale. 4 Cyc. 1041. He is liable to the seller for a loss due to his negligence, or to his deviating from instructions, as well as for money paid him by purchasers. He is liable to a purchaser under certain circumstances. We can see good ground for refusing a license to a resident of another state in the difficulty that might be encountered in compelling him or his bondsmen to respond in case he rendered himself liable to either seller or purchaser. The case of State v. Nolan, 108 Minn. 170, 122 N. W. 255, in which an ordinance of the city of Hastings requiring a license of "itinerant merchants and transient vendors," exempting from its operation residents of the city, was held unconstitutional, is therefore not controlling.

Nor are other cases where laws have been held invalid that discriminated against nonresidents when there were plainly no evils to correct and no reason to apprehend injury to the public by freely permitting nonresidents to engage in the business within the state. Such are the authorities cited in the brief of plaintiff, and in the

opinion in the Nolan case. We are unable to say that the legislature had no grounds for the discrimination made against nonresidents or that the classification was arbitrary and hold that the law does not, in this respect, violate the Federal Constitution or the Fourteenth amendment.

A more difficult question is whether the exclusion of resident aliens renders the act violative of the Fourteenth amendment or of section 2, art. 1, of the state Constitution. The Fourteenth amendment applies to aliens as well as citizens. A statute arbitrarily forbidding aliens to engage in ordinary kinds of business to earn their living would be unconstitutional. Yick Wo v. Hopkins, 118 U. S. 356, 6 Sup. Ct. 1064, 30 L. ed. 220. But where the calling or occupation is one which, though lawful, is subject to abuse, and likely to become injurious to the community, there is good authority for holding that the state may limit it to its own citizens and deny the right to all others. Commonwealth v. Hana, 195 Mass. 262, 81 N. E. 149, 122 Am. St. 251, 11 Ann. Cas. 514, 11 L.R.A.(N.S.) 799, and note. In the case cited, the supreme court of Massachusetts upheld a law of that state restricting the granting of peddlers' licenses to citizens and those who have declared their intention to become such. In Tragreser v. Gray, 73 Md. 250, 20 Atl. 905, 9 L.R.A. 780, 25 Am. St. 587, it was held that a state could deny to persons not citizens of the United States the right to sell spirituous liquors within its borders. These cases are cited with approval in Patmore v. Pennsylvania, 232 U. S. 138, 34 Sup. Ct. 281, 58 L. ed. 539, in which it was held that a statute of Pennsylvania, making it unlawful for unnaturalized foreign born residents to kill wild game, except in defense of person or property, and to that end making the possession of shot guns and rifles unlawful, was not unconstitutional under the due process and equal protection provisions of the Fourteenth amendment. Mr. Justice Holmes, after stating the right of the state to classify with reference to the evil to be prevented, said:

"The question therefore narrows itself to whether this court can say that the legislature of Pennsylvania was not warranted in assuming as its premise for the law that resident unnaturalized aliens were the peculiar source of the evil that it desired to prevent. * * * Ob-

viously the question so stated is one of local experience on which this court ought to be very slow to declare that the state legislature was wrong in its facts. * * * If we might trust popular speech in some states it was right—but it is enough that this court has no such knowledge of local conditions as to be able to say that it was manifestly wrong."

It is at this point that the court refers to Tragreser v. Gray and Commonwealth v. Hana.

There are authorities apparently to the contrary. Templar v. State Board of Examiners, 131 Mich. 254, 90 N. W. 1058, 100 Am. St. 610; State v. Montgomery, 94 Me. 192, 47 Atl. 165, 80 Am. St. 386. The former case held unconstitutional a law which prohibited issuing a barber's license to an alien, the latter a law like the one held valid in Commonwealth v. Hana.

While we are not able to see plainly that resident unnaturalized aliens were "the peculiar source of the evil" that the legislature desired to prevent when it enacted the law in question, nevertheless it may have been so. To again quote Mr. Justice Holmes:

."This court ought to be very slow to declare that the state legislature was wrong in its facts." "It is enough that this court has no such knowledge of local conditions as to be able to say that it was manifestly wrong." It may be that the evil or some part of it lay in the fact that foreigners, without the interest in the welfare of the state and county that the citizen has, perhaps irresponsible, were acting as auctioneers, to the harm of the public.

For a decision pointing out the evils which laws licensing and regulating the business have been enacted to correct, we refer to People v. Grant, 126 N. Y. 473, 27 N. E. 964. With some hesitation we reach the conclusion that denying to aliens the right to act as auctioneers does not contravene the due process or equal protection provisions of the Fourteenth amendment, or the provisions of article 1, section 2, of the state Constitution. This conclusion is at least not weakened by the fact that the law in question has stood without question for 50 years. It is strengthened by the idea that under the act an auctioneer may to a certain extent be considered as an administrative officer of the state. People v. Grant, supra. In this respect the cases uphold-

ing laws prescribing citizenship as a requirement for admission to the bar are analogous. See authorities cited in note to Commonwealth v. Hana, 11 L.R.A.(N.S.) 799. Our statute (G. S. 1913, § 4946) makes citizenship and residence in the state a prerequisite to the admission to the bar of graduates of law schools. We may also call attention to G. S. 1913, § 4964, providing that no certificate for a certified public accountant shall be granted to any person other than a citizen of the United States, or person who has in good faith declared his intention of becoming such citizen.

The claim is made that the law is unconstitutional because it delegates legislative power to the county board or auditor. The argument is based upon the use of the word "may." It is contended that the statute grants to the county board and the auditor the absolute and arbitrary power to license or refuse to license as an auctioneer any voter who applies and pays the fee. It is probably true that there is some discretion in the licensing officer, but this does not amount to a delegation of legislative power. It is rather an administrative or executive function, and a delegation of such functions does not violate the constitutional provision. 1 Dunnell, Minn. Digest, § 1600, and cases cited.

We hold that the law in question is valid, and that the demurrer was rightly sustained.

Order affirmed.