HAMILTON, J.
The relator seeks by mandamus to compel the respondent to issue a license to him to operate a pool table in Cincinnati, Ohio, application for which was made by relator together with the tender of the license fee. The issue of the license was refused by respondent.
The answer of respondent claims to justify his refusal to issue the license upon the ground that relator is not a citizen of the United States, but is a citizen of the country of Greece, and that the ordinance of the city of Cincinnati prohibits the issuance of a license to keep a pool table to a person who is not a citizen of the United States.
The ordinance providing for the issuing of licenses under which application was made by relator, is as follows:
“An Ordinance, No. 76 — 1918, ‘Providing for the licensing of billiard and pool tables by amending original Section 777 of the Code of Ordinances of the City of Cincinnati. ’
“Be it ordained by the council of the city of Cincinnati, state of Ohio:
*544 “Section 1. That original Section 777 of the Code of Ordinances of the city of' Cincinnati be and the same is hereby amended to read as follows:
“Section 777. Billiard Table, etc. — Bach proprietor of a billiard or pool table shall pay a license of twenty-five ($25) dollars per annum for one such table and fifteen ($15) dollars per annum for each additional table; provided, however, that no license shall be granted to a person who is not a citizen of the United States.
“Section 2. That said original Section 777 of the Code of Ordinances be and the same is hereby repealed.
“Section 3. This ordinance shall take effect and be in force from and after the earliest period allowed by law.
“Passed February 26, A. D., 1918.
“Carl M. Jacobs, Vice Mayor.
“Attest: Fred Schneller, Clerk.
“Approved: John Galvin, Mayor. Feb. 28, 1918.
The relator admits that he is not a citizen of the United States, but urges that the provision of the ordinance “provided, however, that no license shall be granted to a person who is not a citizen of the United States," discriminates against him because he is an alien and is therefore unconstitutional under the fourteenth amendment of the constitution of the United States.
Sections 3659 and 3670 G. C. empower municipalities to regulate and license pool and billiard tables, etc., and under the authority delegated to , it by said sections the ordinance in question was passed by the council of the city of Cincinnati. The case is one, therefore, relating to the police power of the state, and is consequently a question concerning the peace and morals of the community. Does the ordinance transcend the police power conferred upon a municipality by the statutes and recognized by the law of the land?
In determining the question the same rules of construction will apply as are applicable in passing upon the constitutionality of an act of the general assembly.
It must be conceded that “private interests are frequently found in opposition to public good; that public morals, public health, public order, public peace and tranquility are objects of cardinal importance to the well being of society. ’ ’ To preserve and protect these objects for the public good many states, including our own state of Ohio, have passed laws limiting the *545 granting of licenses to engage in the business of retailing intoxicating liquors to citizens of the United States. Such laws have been uniformly upheld, and in no instance held to be violative of the fourteenth amendment to the constitution of the United States.
The leading ease on this question is that of Trageser v. Gray, 73 Md. 250 [20 Atl. 905; 9 L. R. A. 780; 25 Am. St. 587]; wherein it was held:
“A state’s denial to persons not citizens of the United States of the right to obtain licenses to sell spirituous liquors within its borders is not a discrimination against them or an abridgment of their rights within the prohibition of the fourteenth amendment of the constitution of the United States.”
And on page 786 the court says:
“We are unable to conceive that anyone, citizen or alien, can acquire rights which could in any way control, impair, impede, limit or diminish the police power of a state. Such power is original, inherent and exclusive; it has never been surrendered to the general government and never can be surrendered without imperiling the existence of civil society. ’ ’
It seems clear that this ease, together with like cases on the question of the sale 'of intoxicating liquors, is analogous to the one at bar on the question of regulation.
In the case of Commonwealth v. Kinsley, 113 Mass. 579, the court say: “The keeping of a pool table for hire is one of the many things affecting the public morals which the legislature can absolutely prohibit or can regulate,” thus classifying pool tables for hire with the business of retailing intoxicating liquors as effecting public morals.
While it is true the element of the sale of intoxicants is not involved, it is a matter of common knowledge that pool and billiard tables are mostly frequented by young men many of whom are minors, with the opportunity ever present of forming habits detrimental to their future citizenship, and it is only fair and proper to presume that as a class citizens who are interested in the laws of our country may be better entrusted with the conduct of a business which directly affects social conditions, than an alien whose only interest is pecuniary.
*546 The cases cited in the brief of counsel for relator are not in point, as in those eases the acts declared unconstitutional were clearly passed for the sole purpose of depriving the Chinese in the city of San Francisco of the right to earn a living in the laundry business. As the court say in the case of Wright v. May, 127 Minn. 150 [149 N. W. 9; 54 L. R. A. 151].
“A statute arbitrarily forbidding aliens to engage in ordinary kinds of business to earn their living would be unconstitutional. * * * But where the calling or occupation is one which, though lawful, is subject to abuse, and likely to become injurious to the. community, there is good authority for holding that the state may limit it to its own citizens and deny the right to all others.”
In the ease of Commonwealth v. Hana, 195 Mass. 262 [81 N. E. 49; 11 L. R. A. (N. S.) 799; 122 Am. St. 251; 11 Ann. Cas. 514], the Supreme Court upheld the law of that state restricting the granting of peddlers’ licenses to citizens and those who have declared their intention to become such.
In the case of Patsone v. Pennsylvania, 232 U. S. 138 [34 Sup. Ct. 281], the cases of Commonwealth v. Hana, and Tragreser v. Gray, supra, were cited with approval in the United States Court.
In the case of Patsone v. Pennsylvania, supra, the court upheld the statute of that state making it unlawful for unnaturalized foreign born residents to Mil wild game except in defense of person or property, and to that end making the possession of shotguns and rifles unlawful, holding the law not unconstitutional under the due process and equal protection provisions of the fourteenth amendment. Mr. Justice Holmes after stating the right of the state to classify with reference to the evil to be prevented, said :
! ‘ The question therefore narrows itself to whether this court can say that the legislature of Pennsylvania was not warranted in assuming as its premise for the law that resident unnaturalized aliens where the peculiar source of the evil that it desired to prevent. # Obviously the question so stated is one of local experience on which this court ought to be very slow to declare that the state legislature was wrong in its facts. * * * If we might trust popular speech in some states it was right; but it is *547 enough, that this court has no such knowledge of local conditions as to be able to say that it was manifestly wrong. ’ ’
It will be seen from the above that the court had in mind the proposition that local authorities possessed discretion, to some extent at least, in the passing of laws under the police power regulating the operation of certain businesses as affecting the morals of a community, which discretion will not be interfered with by the court unless clearly shown- to be an abuse thereof to the extent that it was manifestly wrong.
We are therefore of the opinion upon sound reason and the authorities cited, that the ordinance in question does not violate the fourteenth amendment to the constitution of the United States, and the peremptory writ of mandamus is denied.
Jones and Wilson, JJ., concur.