THE BOROUH OF LODI, PLAINTIFF-RESPONDENT, v. FRAVI REALTY COMPANY, A CORPORATION, DEFENDANT-APPELLANT.

Argued January 16, 1950—Decided February 14, 1950.

*Mr. George F. Losche* argued the cause for plaintiff-respondent.

*Mr. Aaron Heller* argued the cause for defendant-appellant (*Messrs. Heller & Laiks*, attorneys).

The opinion of the court was delivered by

CASE, J.   The Borough of Lodi sued in the Superior Court, Law Division, to recover the borough's loss on an uncompleted auction sale of land allegedly made to defendant, Fravi·Realty Company, a corporation.   The trial was before the court without a jury and resulted in a judgment for the borough in the amount of $5,700 and costs.   Defendant appeals.

The Borough of Lodi conducted an auction sale of various parcels of land on May 25, 1946.   When lot No. 4 in block 81 A was put up, the high bid of $8,000 was made by one Frank Stamato, and the lot was struck off to him.   One of the disputes at the trial was whether the property was bid in by him individually or, as the borough claimed, by him as president of and agent for Fravi Realty Company.   In making the bid, Stamato did no more than name the amount bid.   One Anthony Cavallo, clerk to the real estate board of the borough, was present for the purpose of checking up on sales, getting the names of the successful bidders, receiving the deposits and learning what name a bidder wished to have inserted in the deed.   He also acted as clerk to the auctioneer.   Stamato, after the property had been struck off, came to Cavallo and, by the check of "Frank Stamato & Co.," paid $800, ten per cent of the bid price.   Cavallo asked, "Whose name do you want that property in?" and the reply was, "Fravi Realty Company, 40 Sidney Street, Lodi."

Lying before Cavallo at the time was a form used for preliminary offers made in advance of the official sale.   In the blank spaces of that particular copy data had been inserted so that the paper then read as follows (filled-in matter italicized) :

"BOROUGH OF LODI
"NEW JERSEY

Dated: *May 18, 1946*

"Hon. Mayor and Council
"Borough of Lodi
"New Jersey

"Gentlemen :

"I hereby offer to purchase at public auction, premises located on *North of Needs Lane* known as block *81 A* lots *4* on the Assessment Map of the Borough of Lodi.

"The minimum bid price which I will submit will be the sum of *$300.00*   As evidence of good faith on my part I hereby tender the sum of    *$50.–*

"It is understood that in the event that I am the successful bidder, the sum of money herein submitted will be applied on account of the purchase price in accordance with the terms and conditions of the sale; and in the event that I am not the successful bidder, then the moneys herein tendered are to be returned to the undersigned.

"If the undersigned fails to bid for the property, then the amount of $        shall be retained by the Borough to help defray expenses on the preparation of sale. .

"Very truly yours,

> "*Paul Valentino*
> "*165 Main St.*
> "*Lodi, N. J.*
> "*c/o Martin J. Di Maria*
> "*9 Washington St.*"

The explanation of the sheet is that a week before the auction sale Paul Valentino had come to Cavallo and requested that the lot be included in the sale. Cavallo's description of his practice in such instances is:

"Well, any person that comes in and wants to buy property from the Borough, I always put the date of the day he comes and note lot and block that he wants, and then put his name down, and he leaves a deposit."

So Cavallo, at the time of Valentino's visit, filled in the form by inserting the description of the lot and the figures $300 and $50, and, at the bottom, Valentino's name and address, "Paul Valentino, 165 Main St., Lodi, N. J. c/o Martin J. Di Maria, 9 Washington St.;" and he took and retained Valentino's check for the fifty dollar deposit. Valentino appeared at the auction and was the runner-up in the bidding. When, following the sale, Stamato paid his deposit and gave Cavallo the requested information, Cavallo took that Valentino paper, crossed out the figures $300 and $50, wrote with pencil $8,000 and $800 in their stead, and, likewise in pencil, crossed out the name and address of Valentino and wrote the name and address "Fravi Realty Co., 40 Sidney St., Lodi." Cavallo also noted thereon "Check No. 973—$50.00 Returned 5/28/46, A. F. Cavallo, Real Est.

Dept." It is that paper (Exhibit P11 at the trial) and the terms and conditions of sale which the borough relies upon as an agreement in writing to hold Fravi Realty Co. under the statute of frauds. The balance of the bid price was not paid, and the borough, on October 11, 1946, resold the parcel at public sale to the highest bidder for $1,500. Credit was given the defendant for the $800 deposit and the proceeds from the resale; and this suit was brought to recover the balance of the bid price, with interest.

The court, denying defendant's motion for judgment in its favor, awarded judgment against the defendant as stated above.

The Statute of Frauds, *R. S.* 25 :1–5, provides:

"No action shall be brought upon any of the following agreements or promises, unless the agreement or promise, upon which such action shall be brought or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or by some other person thereunto by him lawfully authorized:
\* \* \*
"d. A contract or sale of real estate, or any interest in or concerning the same
\* \* \*."

An auction sale of land by a municipality is within the application of the Statute of Frauds. *Buckley v. Mayor and Aldermen of Jersey City,* 105 *N. J. Eq.* 470 (*Ch.* 1930); affirmed, 107 *N. J. Eq.* 137 (*E. & A.* 1930). The borough, admitting that proposition of law, contends that Exhibit P11 was a writing sufficient to satisfy the statute. It argues that point under five headings, namely, that defendant was the real purchaser, that the writing was signed by the defendant in that Cavallo as auctioneer's clerk was authorized to sign for it, that Cavallo's authority as auctioneer's clerk was not invalidated by his interest as an officer of the seller, that the seller's name is in writing in that it appears in the letterhead, and that the writing incorporates the conditions of the sale. Most of those contentions may be taken as well stated. Specifically, we accept the contention that Cavallo, in addition to representing the borough, also acted as clerk to the auc-

tioneer; and from this it follows that as clerk to the auctioneer he was qualified to bind the seller and the buyer by a suitable writing. *Johnson & Miller v. Buck,* 35 *N. J. L.* 338 (*Sup. Cl.* 1872). It is true, also, that in proper instance other papers may be considered a part of the signed paper if incorporated therein by reference. *Keller v. Homan,* 136 *N. J. Eq.* 228 (*E. & A.* 1944). Nevertheless, the instrument itself is, intrinsically, not such a writing as will sustain the action. It was not the auctioneer's book. It was not originated by him or for him. It is not and does not purport to be a record of what he did. Its composition is wholly *in futuro;* an undertaking to bid a minimum amount at an auction sale to be held a week after its date with an accompanying deposit as evidence of good faith; the deposit to be applied toward the purchase price in the contingency that the offerer became the successful bidder, and to be returned if he did not; with a further authority to the borough to retain an unnamed amount to help defray expenses if the offerer should fail to bid. The effort is to twist that undertaking into an accomplished contract of purchase and sale. A notation of essential facts for the use of the scrivener could be jotted upon that or upon any scrap of paper; possibly the essential items of the insertion, properly assembled and excluded from a contradictory setting, and done for the purpose of establishing an agreement, would have taken the case out of the statute. But the presence of those isolated items in a mere jumble of words does not constitute a memorandum of the agreement charged against the defendant. The writing, clearly, is not an agreement of purchase and sale, is not an authentication of sale and is not sufficiently intelligible to constitute a memorandum or note of such an agreement or of a sale. As related to that which it is held forth as proving, it does not make sense.

The confusion and inaccuracies of the paper writing are such that the incorporation therein of the terms and conditions to which it refers merely accentuates the lack of a sensible statement with relation to an accomplished sale. The paragraph of it which mentions terms and conditions does

not assume them to be coexistent, but to be factors which will control the sale at that future time when the sale shall be held.

It is unnecessary to consider the remaining points presented in the briefs.

We conclude that the judgment below should be reversed; and since the reasoning upon which we reach that result effects an ultimate conclusion of the issues against the borough, judgment for the defendant will be entered as on the latter's motion to that end. *Rule* 1:4–9(b).

Wachenfeld, J., concurring in result.

*For reversal*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, WACHENFELD, BURLING and ACKERSON—7.

*For affirmance*—None.