STATE v. LEWIS TYSDAL, d.b.a. FERGUS
FALLS AUCTION MARKET.

228 N. W. 2d 230.

March 7, 1975—No. 45006.

*Warren Spannaus*, Attorney General, and *James W. Neher*, Special Assistant Attorney General, for appellant.

*Irvine, Ramstad, Quam & Briggs* and *John C. Quam,* for respondent.

Heard before Sheran, C. J., and Kelly and Yetka, JJ., and considered and decided by the court en banc.

Sheran, Chief Justice.

Appeal by the state from a judgment entered on findings, conclusions, and an order made by Judge Charles W. Kennedy, Otter Tail County District Court. In September 1970, the commissioner of revenue assessed a sales tax of $932.29, as well as interest and penalty in the sum of $129.21, on auction sales of tangible personal property owned by others and sold by respondent from August 1, 1967, through December 31, 1969.

In January 1972, appellant sued to recover the assessed tax plus additional penalty and interest of $170.40, a total of $1,231.90. The lower court held that the auction proceeds were exempt from the sales tax as proceeds from isolated or occasional sales.[1]

Respondent operates the Fergus Falls Auction Market where he has held weekly auctions for the past 31 years. An item to be auctioned is delivered to respondent by the owner. The owner then signs a slip which reads in part: "I * * * certify that the above [described item] is my property * * *. I * * * consign [it] to the above named company, to sell at auction or private sale * * *." Bidders do not know who owns the item unless a request is properly made. In most cases an item must be paid for in cash or by check payable to respondent. Checks are deposited in respondent's checking account.

---

[1] Minn. St. 297A.25, subd. 1, provides in part: "The following are specifically exempted from the taxes imposed by sections 297A.01 to 297A.44:

* * * * *

"(k) the gross receipts from the isolated or occasional sale of tangible personal property in Minnesota not made in the normal course of business of selling that kind of property, and the storage, use, or consumption of property acquired as a result of such a sale."

The buyer is issued a receipt naming him, describing the item and price, and reciting: "This Auction Market acts only as agent of the seller in the above transaction * * *." Keeping a percentage of the auction price as a commission, respondent remits to the item's former owner the remainder of the price, along with a slip listing the item sold, amount received, and commission retained.

The trial court found these facts: Respondent is the "owner-seller['s]" agent; transfer of title and possession is from the "owner-seller" to the buyer "at the auction;" respondent is not a retailer "separate from the owner of the item sold by [respondent] as agent for the owner." The matter was tried on the assumption that the "owner-sellers" were exempt from sales tax liability under Minn. St. 297A.25, subd. 1(k). We limit our decision to cases presenting such facts.

Finding that respondent had not collected or remitted a sales tax on auction sales made during the contested period, the trial court concluded: (1) Merely because property is sold at auction does not deprive its proceeds of exemption under § 297A.25, subd. 1(k); (2) c. 297A does not make an agent liable for a sales tax in situations where the principal is not; (3) the state is not entitled to the sales tax.

One issue is presented: Where a person in the course of business conducts upon his business premises sales at auction of tangible personal property owned by others, are such auction sales subject to the sales tax?

■ Throughout the period in question, Minnesota imposed an excise tax on select entities for designated sales made by them.[2] A statutory presumption exists "that all gross receipts

---

[2] Ex. Sess. L. 1967, c. 32, art. XIII, § 2, provides: "There is hereby imposed an excise tax of three percent of the gross receipts of any person from sales at retail * * * made in this state after July 31, 1967. In no case shall the tax imposed hereby upon the seller exceed the amount of tax which he is authorized and required by law to collect from the pur-

are subject to the tax until the contrary is established." Minn. St. 297A.09. Additionally,

"The tax, as assessed by the commissioner, with any penalties included therein, shall be presumed to be valid and correctly determined and assessed, and the burden shall be upon the person required to file the return to establish the incorrectness or invalidity of the assessment." Minn. St. 297A.33, subd. 5.[3]

Section 297A.01, subd. 4, defines "sales at retail" in pertinent part as follows: "A * * * 'sale at retail' means a sale for any purpose other than resale in the regular course of business." "Sale," as relevant herein, is defined at § 297A.01, subd. 3(a):

"A 'sale' * * * includes, but is not limited to, each of the following transactions:

(a) Any transfer of title or possession, or both, of tangible personal property, whether absolutely or conditionally, * * * for a consideration in money or by exchange or barter."

Ordinarily an auctioneer is the agent of the owner of the auctioned item. Farmers & Merchants State Bank v. Folmer, 217 Minn. 513, 15 N. W. 2d 13 (1944); Wright v. May, 127 Minn. 150, 149 N. W. 9 (1914). See, also, 7 Am. Jur. 2d, Auctions and Auctioneers, §§ 10, 59. The state does not dispute the point and we are not disposed to change the rule for purposes of this decision. This being so, the question must be whether the auctioneer-agent is to be burdened with tax responsibilities when he makes

chaser." Minn. St. 297A.03, subd. 1, enables the seller to collect the tax from the purchasing public.

[3] Cf. County of Hennepin v. Honeywell, Inc. 297 Minn. 112, 210 N. W. 2d 38 (1973); Abex Corp. v. Commr. of Taxation, 295 Minn. 445, 207 N. W. 2d 37 (1973); Camping & Education Foundation v. State, 282 Minn. 245, 164 N. W. 2d 369 (1969). See, 68 Am. Jur. 2d, Sales and Use Taxes, §§ 11, 100.

However, the general rule is that if an ambiguity remains as to whether the tax should be imposed, the taxpayer should be protected. See, e.g., American Locker Co. v. City of New York, 308 N. Y. 264, 125 N. E. 2d 421 (1955); 18 Dunnell, Dig. (3 ed.) § 9173.

an auction sale of an item owned by his principal where the principal, had he elected to sell the item on his own, would not be so compelled by statute.

In this case, where the agent also appears to be a consignee, the agent has authority to bind his principal by consummating a sale, including transfer of title and possession, for the principal.[4] That the auctioneer has possession prior to sale and serves as a conduit for the sale proceeds is of no consequence. The auctioneer merely acts for the principal, as would any other agent. The agent is only required to collect the tax for the principal if the principal is liable for the tax under the statute.[5]

Because the relationship between respondent and the auctioned item's owner is one of agency, respondent is not engaged in making sales at retail. Respondent only represents his principal, doing that which the principal is not accustomed to or skilled at doing. The agent should not, under these circumstances and this tax scheme, be held more responsible than the law makes his principal.[6] In this case, respondent has done no more than what

[4] In auction sales, the common-law rule generally is that title passes upon completion of the auction sale or upon payment of the price, although some courts have held that title does not pass until a deed is executed and delivered. And although there is no right to possession until the price is paid, physical possession practically accompanies the legal right. 7 Am. Jur. 2d, Auctions and Auctioneers, §§ 48, 49. See, Annotation, 36 A. L. R. 2d 1362.

[5] Cf. 68 Am. Jur. 2d, Sales and Use Taxes, § 95, where it is said that one whose property is sold through an agent is the seller in law and is liable for a sales tax to the same extent as if he sold it himself rather than by utilizing his agent.

[6] This is not to say that an agent may not be subject to other types of taxes for which the principal is not liable, as license, property, and income taxes. These are costs incurred by the agent for the privilege of doing business and occupying a certain status in society. The sales tax rests on a different footing, being a tax on gross receipts of certain persons only for certain acts only. It is a tax not "on" the retailer so

each of his numerous principals would have done individually: Engage in the "isolated or occasional sale of tangible personal property * * * not made in the normal course of business of selling that kind of property," Minn. St. 297A.25, subd. 1(k), a procedure exempt from the sales tax structure.[7]

The state places heavy emphasis on Oberlander v. Porterfield, 28 Ohio St. 2d 171, 277 N. E. 2d 198 (1971), a case in which an auctioneer was held liable for uncollected sales taxes. The court considered the nature of the sales involved and by whom made. Ohio Rev. Code, § 5739.01(B), defined "sale" in these terms: "[A]ll transactions by which title or possession, or both, of tangible personal property, is or is to be transferred * * * for a consideration * * *." Ohio here departs from our applicable law. In Ohio Rev. Code, § 5739.01(C), "Vendor" is defined as "[T]he person by whom the transfer effected * * * by a sale is or is to be made * * *." The court stressed this definition in holding that the tax collection burden, and resulting liability, was on the auctioneer.

Our statute is significantly different and requires a different result. The 1967 sales tax was set at "three percent of the gross receipts of any person from sales at retail." Minn. St. 1967, § 297A.02. During the greater part of the period in question here, § 297A.01, subd. 2 defined "person" in these words, among others not relevant:

"* * * [A]ny individual, firm, partnership, joint venture, association, cooperative, social club, fraternal organization, mu-

---

much as it is "on" the consuming public. Only persons selected by statute are burdened with its collection and are liable for its noncollection.

[7] Cf. Arizona Tax Comm. v. Dairy & Consumers Co-op. Assn. 70 Ariz. 7, 215 P. 2d 235 (1950); O'Neil v. United Producers & Consumers Co-op. 57 Ariz. 295, 113 P. 2d 645 (1941); Lee v. Smith, 144 Fla. 557, 198 So. 197 (1940), gross receipt tax cases. See, King's Cove, Inc. v. Commr. of Taxation, Tax Court, Dkt. No. 1670, November 29, 1972; Doolittle v. Johnson, 250 A. 2d 822 (Maine 1969); Richard Bertram & Co. v. Green, 132 So. 2d 24 (Fla. App. 1961).

nicipal or private corporation * * *, estate, trusts, business trusts, receiver, trustee, syndicate, the United States, the state of Minnesota, any political subdivision of Minnesota, or any other group or combination acting as a unit * * *."

A serious problem not met by the state is that the gross receipts [8] from which the tax is calculated are "of" the principal employing the agent: These gross receipts belonged not to respondent, but to the various principals, none of whom is a party to this suit. The tax burden is not aimed at the agent, but at the principal who is here exempt. In a sense, the principals' exemption status need not be reached since the tax does not, by its terms, attach to these proceeds. They are not gross receipts "of" respondent, whose gross receipts are more likely the sum of his commissions; they are gross receipts "of" the principals.[9]

■ We are troubled by L. 1969, c. 571, which was not brought to our attention, or to the attention of the trial court, by the parties. In addressing itself to the § 297A.01, subd. 2, "person" discussed above, the legislature added these words: " 'Person' shall also include any agent or consignee of any individual or organization enumerated in this subdivision." This amendment became effective on May 23, 1969, within the period in question.

In our opinion, the trial court must be affirmed, at least for those sale proceeds sought to be taxed from August 1, 1967, through May 22, 1969. Given the lack of argument both here and in the trial court on the issue just raised, we are unsure as to the proper result for those sale proceeds collected from May 23 through December 31, 1969. We therefore remand to the district

---

[8] Minn. St. 297A.01, subd. 9, provides in part: " 'Gross receipts' means the total amount received, in money or otherwise, for all sales at retail as measured by the sales price."

[9] Minn. St. 1969, § 297A.02, was amended by Ex. Sess. L. 1971, c. 31, art. I, § 2. The tax burden was placed on "gross receipts from sales at retail * * * made by any person in this state."

court for reconsideration of the tax vis-a-vis sales made after the effective date of the amendment.

Affirmed in part; remanded with instructions.