Robert P. SCHWINN, Conservator of the Estate of Luellia S. Barnes, Appellant,

v.

Robert T. GRIFFITH, Respondent.

No. 50759.

Supreme Court of Minnesota.

March 6, 1981.

Robert P. Schwinn, pro se.

Robert Nicklaus, Chaska, for respondent.

SHERAN, Chief Justice.

This case involves a specific performance action initiated by plaintiff/appellant Robert P. Schwinn (appellant) against defendant/respondent Robert T. Griffith (respondent). The action was brought to enforce a purchase agreement for the sale of two lots

in Watertown, Minnesota, signed by appellant and his agent Fred W. Radde, that was executed following an auction at which respondent was the high bidder. The district court dismissed the complaint, finding that the statute of frauds governing the sale of real property, Minn.Stat. § 513.05 (1980), required a written acceptance by the "party to be charged." We reverse.

Luellia S. Barnes was the fee owner of Lots 9 and 10, Block 28, in the Village of Watertown, Carver County. On April 6, 1976, appellant was duly appointed conservator of the Barnes estate by the Hennepin County Probate Court. In this capacity, appellant authorized Fred W. Radde & Sons to conduct an auction to sell the above-described real estate. The auction was held September 19, 1977 and respondent, a Watertown dentist experienced in the purchase of property at auctions, was the high bidder. Prior to the auction, respondent had an opportunity to view and inspect the lots. In addition, the auctioneer explained the conditions under which the auction was being held immediately preceding the taking of bids. Among these conditions were: the purchase price was subject to the approval of the Hennepin County Probate Judge; the lots were to be sold with zoning "as is"; and the successful bidder on the first lot had an option to purchase the second lot for the same price. Respondent's bid of $18,000 was highest and he thereafter exercised the option to purchase both lots for $36,000. This arrangement was agreed to by the auctioneer.

Before the conclusion of the auction, respondent left the premises, leaving with his daughter a signed blank check with which to pay the earnest money. After the auction, a purchase agreement was prepared setting forth the terms of sale. This agreement was signed by appellant and the auctioneer but they refused to accept the blank check and requested respondent's daughter to have respondent come in and sign the purchase agreement. Respondent subsequently refused to sign the agreement or pay any earnest money. Shortly thereafter, the purchase price was approved by the Hennepin County Judge of Probate Court. Appellant then commenced his action for specific performance.

The court is asked to resolve the following issues:

(1) Does Minnesota's statute of frauds pertaining to contracts for the sale of real estate apply to auction sales?

(2) If so, does the statute of frauds require something in addition to the vendor's subscription on a note or memorandum evidencing the sale?

(3) In a sale of real estate by auction, does the auctioneer act as an agent for both parties to the sale for the purpose of binding them by a memorandum of sale?

 Appellant argues that, notwithstanding the statute of frauds, public policy favors the enforcement of oral contracts entered into at auctions due to the numerous Minnesota statutes that authorize auction sales and because such sales require the good faith and honesty of all involved parties. Absent the statute of frauds, a binding oral contract is created following a bid and the fall of the auctioneer's hammer. *See Anderson v. Wisconsin Central Ry.*, 107 Minn. 296, 314, 120 N.W. 39, 46 (1909). This court cannot, however, disregard the unequivocal statement of our statute that *"[e]very* contract * * * for the sale of any lands * * * shall be void[1] unless the contract, or some note or memorandum thereof * * * is in writing."[2] Minn.Stat. § 513.05

---

1. While respondent argues that oral contracts within the statute of frauds are rendered "void," the recent decisions of this court have made it clear that the word "void" in the statute will be interpreted to mean "voidable." *Royal Realty Co. v. Levin*, 244 Minn. 288, 292–94, 69 N.W.2d 667, 671–72 (1955); *see Greer v. Kooiker*, 312 Minn. 499, 505 n.2, 253 N.W.2d 133, 138 n.2 (1977); *Borchardt v. Kulick*, 234 Minn. 308, 319, 48 N.W.2d 318, 325 (1951).

2. Minn.Stat. § 513.05 (1980) provides in full:
 Every contract for the leasing for a longer period than one year or for the sale of any lands, or any interest in lands, shall be void unless the contract, or some note or memorandum thereof, expressing the considera-

(1980) (emphasis added). In addition, we have indicated that the statute of frauds relating to the sale of goods applies to auctions. *Sargent v. Bryan*, 153 Minn. 198, 189 N.W. 935 (1922). A majority of courts and commentators consider auctions to be indistinguishable from other transactions within the statute. Professor Williston states that an auctioneer's written memorandum, "as in other cases under the Statute of Frauds, must contain all the essential terms of the contract." 4 S. Williston, *A Treatise on the Law of Contracts* § 588, at 183–84 (3d ed. W. Jaeger 1961); *see, e. g., Wilcher v. McGuire*, 537 S.W.2d 844, 847 (Mo.App.1976); *Borough of Lodi v. Fravi Realty Co.*, 4 N.J. 28, 32, 71 A.2d 333, 334 (1950); *Polka v. May*, 383 Pa. 80, 83, 118 A.2d 154, 156 (1955). Appellant's first argument must therefore be rejected.

Having decided that the statute of frauds applies to the transaction at issue, we must now consider whether the requirements of the statute have been met. Respondent admits that the purchase agreement is sufficiently complete to satisfy the statute. The parties do not agree, however, on what constitutes a sufficient subscription within the meaning of the statute. In contrast to the English statute of frauds, § 513.05 requires a note or memorandum "subscribed by the party by whom the lease or sale is to be made [the vendor]" and not by the "party to be charged." Appellant contends that the statute should be taken at face value; the writing need only be subscribed by the vendor.[3] Respondent argues that the cases mandate both a subscription by the vendor and a subscribed acceptance by the vendee.[4]

Neither party addresses another view supported by the cases: that the statute requires a subscription by only the vendor, but the writing must be accepted by the vendee upon delivery.[5] The apparent lack of agreement in the Minnesota cases was noted by this court in *Hehl v. Estate of Klotter*, 277 N.W.2d 660, 663 n.2 (Minn. 1979).

Representative of the cases cited by respondent is *Lanz v. McLaughlin*, 14 Minn. 72 (Gil. 55) (1869). In *Lanz*, the parties negotiated for the sale of land through the mail. The court conceded that the offeror's letters constituted a sufficient offer, but refused to sanction the admission of testimony to the effect that the offeree had verbally accepted the terms of the offer. The court reversed the lower court's order granting specific performance, stating: "An oral acceptance would not satisfy the statute of frauds. The contract which could be perfected only by an acceptance of the proposal or offer, would not be a *contract in writing*, unless the acceptance was in writing." *Id.* at 75 (Gil. at 57) (emphasis in original). The *Lanz* line of cases are concerned with negotiations that lead to a written offer. In such instances, the written offer does not evidence a completed contract and a written acceptance is required. *See Krohn v. Dustin*, 142 Minn. 304, 172 N.W. 213 (1919). These cases may be distinguished from the instant case, in which there is an oral offer, an oral acceptance, and a note or memorandum committing the agreement to writing.

■ Appellant cites cases that, under the present facts, would permit the statute to

---

tion, is in writing and subscribed by the party by whom the lease or sale is to be made, or by his lawful agent thereunto authorized in writing; and no such contract, when made by an agent, shall be entitled to record unless the authority of such agent be also recorded.

**3.** *See Greer v. Kooiker*, 312 Minn. 499, 253 N.W.2d 133 (1977); *Radke v. Brenon*, 271 Minn. 35, 134 N.W.2d 887 (1965); *Western Land Ass'n v. Banks*, 80 Minn. 317, 83 N.W. 192 (1900); *cf. Malevich v. Hakola*, 278 N.W.2d 541 (Minn.1979).

**4.** *See Callendar v. Kalscheuer*, 289 Minn. 532, 184 N.W.2d 811 (1971) (per curiam); *Lake Co.*

*v. Molan*, 269 Minn. 490, 131 N.W.2d 734 (1964); *Bey v. Keeping*, 192 Minn. 283, 256 N.W. 140 (1934); *Lewis v. Johnson*, 123 Minn. 409, 143 N.W. 1127 (1913); *Ferguson v. Trovaten*, 94 Minn. 209, 102 N.W. 373 (1905); *Newlin v. Hoyt*, 91 Minn. 409, 98 N.W. 323 (1904); *Kileen v. Kennedy*, 90 Minn. 414, 97 N.W. 126 (1903); *Lanz v. McLaughlin*, 14 Minn. 72 (Gil. 55) (1869).

**5.** *See Krohn v. Dustin*, 142 Minn. 304, 172 N.W. 213 (1919); *Gregory Co. v. Shapiro*, 125 Minn. 81, 145 N.W. 791 (1914); *Wilson v. Hoy*, 120 Minn. 451, 139 N.W. 817 (1913).

be satisfied by a vendor's signature alone. However, appellant's authorities do not turn on the subscription issue and do not analyze cases discussing the signature requirement. Only *Western Land Ass'n v. Banks*, 80 Minn. 317, 83 N.W. 192 (1900), lends support to appellant. The better approach is for us to follow the cases that require the vendee to accept delivery of the writing. This is the majority rule in jurisdictions with statutes similar to Minnesota's. The purpose of the statute of frauds is to prevent fraud and discourage perjury. If a vendor's signature is all that is needed to create an enforceable agreement, only one party is necessary to bind an unwitting "vendee." Professor Corbin states:

> It would seem to be easy enough for the vendor to prepare such a memorandum and sign it at any time prior to bringing suit for enforcement, so that in the case of an oral contract for the sale of land the vendor would have the purchaser at his mercy. But the courts have tried to prevent this result by requiring some sort of "mutuality." They have held that a memorandum signed by himself does not enable the vendor to enforce the contract unless the memorandum so signed has been delivered to the purchaser or otherwise accepted by him as a correct memorandum of agreement.

2 A. Corbin *Contracts* § 397, at 359 (1950); *see National Bank of Kentucky v. Louisville Trust Co.*, 67 F.2d 97 (6th Cir. 1933), *cert. denied*, 291 U.S. 665, 54 S.Ct. 440, 78 L.Ed. 1056 (1934); 4 S. Williston, supra, § 586; 18 Minn.L.Rev. 362 (1934). We therefore overrule *Western Land Ass'n* to the extent that it implies that a vendor's signature alone on an otherwise complete memorandum is sufficient to satisfy the statute of frauds.

■ The memorandum of sale in this case was signed only by appellant and the auctioneer. At no point did respondent accept delivery of the writing. This would otherwise be dispositive of the case except for the fact that the transaction at issue was an auction sale. Generally an auctioneer acts for the seller. *See State v. Tysdal*, 303 Minn. 233, 228 N.W.2d 230 (1975). But, once the "property is struck off, he becomes also the agent of the purchaser, at least to the extent of binding him by his memorandum of sale." *Wright v. May*, 127 Minn. 150, 152, 149 N.W. 9, 10 (1914). The general rule is expressed in the *Restatement of Contracts* § 212 (1932): [6]

> (1) In a sale and in a contract to sell at auction the auctioneer or his clerk, if not interested in the subject matter of the sale otherwise than in his function as auctioneer or auctioneer's clerk, is authorized to make and sign a memorandum on behalf of both the buyer and the seller, immediately after the sale.
>
> (2) The power of the auctioneer and of his clerk to sign a memorandum as stated in Subsection (1) may be revoked by a buyer or seller at any time before the power is exercised.

*Id.; see* 4 S. Williston, *supra*, § 588.

■ The auction transaction at issue meets all of the requirements of § 212. First, the memorandum was drafted immediately following the auction and it was signed by the seller and the auctioneer. Second, there is no evidence that the auctioneer was personally interested in the subject matter of the sale. Finally, the respondent did not repudiate the oral contract until after the memorandum had been prepared and subscribed. Accordingly, by signing the purchase agreement, the auctioneer accepted delivery of the memorandum on behalf of respondent for the purpose of satisfying the statute of frauds.[7]

---

6. Although § 212 has been deleted from the tentative draft of the second Restatement, *see Restatement (Second) of Contracts* § 212 (Tent. Draft No. 4, 1968), the concept that an auctioneer acts for both parties has been preserved in the *Restatement (Second) of Contracts* § 211, Comment b (Tent. Draft Nos. 1–7 rev. & ed.

1973) and the *Restatement (Second) of Agency* § 30(2), Comment f (1958).

7. It may be argued that § 513.05 requires the auctioneer's agency to be in writing. Under our reading of the statute, however, only the seller's agent need have written and recorded authority to sign a memorandum on behalf of

Because there exists a sufficient memorandum of sale that was subscribed by the vendor, the delivery of which was accepted by the vendee's agent, appellant is entitled to a decree of specific performance.

The decision of the trial court is reversed. Plaintiff is entitled to a judgment for specific performance with interest at the rate prescribed by law from the date fixed for tender of a deed of conveyance in compliance with the contract.

Reversed.

---

his principal. The statute states that the seller or "*his* lawful agent thereunto authorized in writing," Minn.Stat. § 513.05 (1980) (emphasis added), must sign the note or memorandum.